UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLEAN VISION CORPORATION, a Nevada corporation,<br><br>                              Plaintiff,<br>vs.<br><br>CHRISTOPHER PERCY, an individual; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>                              Defendant. | Case No. 2:22-cv-01862-ART-NJK<br><br>**PRELIMINARY INJUNCTION** |

### I.   **BACKGROUND**

This case arises out of the Eighth Judicial District Court case styled as *Clean Vision Corporation v. Christopher Percy* (Case No. A-22-858543-B). On September 22, 2022, the Eighth Judicial District Court (the "State Court") entered a temporary restraining order ("TRO") in favor of Plaintiff Clean Vision Corporation ("Plaintiff" or the "Company"). On November 2, 2022, the State Court held a hearing on Plaintiff's motion for preliminary injunction (the "Hearing"), at which it granted a preliminary injunction in favor of Plaintiff and instructed the parties to submit a proposed preliminary injunction order consistent with the State Court's ruling.

Before the proposed preliminary injunction was submitted to the State Court, however, Defendant Christopher Percy ("Percy" or "Defendant") filed his petition of removal to this Court. ECF No. 1 (the "Notice of Removal"). On November 23, 2022, the Court issued a minute order, finding that the preliminary injunction granted by the Eighth Judicial District Court remains in effect pursuant to 28 U.S.C. § 1450. ECF No. 14. This Court further instructed the parties to submit proposed language memorializing the terms of the preliminary injunction, as was initially ordered by the Eighth Judicial District Court, or alternatively, if the parties could not agree to terms of a preliminary injunction, submit separate proposed preliminary injunction orders. ECF No. 14. On December 6, 2022, the parties submitted the following proposed language memorializing the terms of a preliminary injunction.

119580564.1

## II. PRELIMINARY FINDINGS OF FACT

This case arises out of a control dispute over a Nevada corporation named Clean Vision Corporation. The Company is a clean energy and sustainable solutions company that was incorporated in Nevada on or about September 15, 2006. The Company is publicly traded and listed on the OTC Markets Group market exchange (the "OTC"). The control dispute arose after Percy sent a letter to the OTC in July 2022 (the "Percy Letter").[1] Thereafter, a "Control Dispute" was triggered with OTC, which resulted in a warning symbol on the Company's public profile and a delay in submitting its second quarter financials.[2]

In evaluating the record, evidence, pleadings, and oral arguments presented at the Hearing, the Court finds that Plaintiff has demonstrated a likelihood of success in its prima facie case against Percy. The OTC Defines a Control Dispute as occurring when "multiple parties claim control of a company."[3] When a Control Dispute is triggered, OTC removes "all control persons from the Company Profile" pending a resolution of the dispute.[4] Critically, the OTC only considers a Control Dispute resolved "when there is an agreement between the two parties or a court order confirming control by one party."[5] Here, due to the Control Dispute, the Company and its management were ultimately locked out of the OTC and therefore unable to upload required disclosures. As a result, the Company missed a required deadline for submitting its second quarter financials.[6] The Control Dispute also caused the Company to be denied access to its stock transfer agent.[7]

---

[1] ECF No. 11-4 ("Motion"), at pgs. 24-25; (Percy does not dispute sending the Percy Letter to the OTC).

[2] *Id.* at pg. 33.

[3] *Id.* at pg. 27.

[4] *Id.*

[5] *Id.*

[6] *Id.* at pg. 20

[7] *Id.* at pgs. 20, 35 (example of an email communications between Percy and the Company's stock transfer agent, Equiniti).

With respect to control, the Company has adopted bylaws, as amended (the "Bylaws"), which govern the management and control of the Company.[8] The Bylaws provide that "[t]he business and affairs of the [Company] shall be managed by its Board of Directors."[9] The Bylaws further provide that "[a]ny vacancy on the Board of Directors may be filled by the affirmative vote of a majority of the shareholders or the Board of Directors."[10] The Bylaws provide for directors to be appointed in at least two ways: (1) a majority consent of the shareholders ("Shareholder Consent");[11] or (2) a majority vote or consent of the Board of Directors ("Board").[12]

In this case, neither party disputes that Percy and Daniel Bates ("Bates") are directors on the Board. Percy, however, challenges Dr. Michael Dorsey's ("Dr. Dorsey") status as member of the Board. Based upon the record, evidence, pleadings, and oral arguments presented at the November 2, 2022, hearing, the Court finds that Plaintiff has demonstrated a likelihood of success on establishing Dorsey's status as a member of the Board under the Bylaws. First, the evidence before the Court shows that Percy previously represented Dorsey to be a director in his letter to the OTC.[13] Percy further stated this representation was made based upon reliance of SEC and other disclosures the Company made and its CEO, Bates, verified as being truthful and accurate. Second, after Dorsey was appointed to the Board in December 2021, Percy signed at least three (3) Board Consents which identified Dorsey as a director.[14] Third, the Company produced evidence on the record that shows Dorsey's board membership was further ratified by a Stockholder Consent.[15]

Therefore, the Court finds that the Company's Board should control the management and affairs of the Company in accordance with the Company's Bylaws. The Court further finds that

---

[8] Motion, at pg. 37-54.

[9] *Id.* at Art. III, § 1.

[10] *Id.* at Art. III, § 11.

[11] *Id.* at Art. II, § 9.

[12] *Id.* at Art. III, §§ 8-9.

[13] *Id.*

[14] ECF No. 11-8 (Reply), at pgs. 22-36.

[15] ECF No. 11-8, at pgs. 39-82.

based upon the evidence presented, the Board is comprised of at least three (3) directors: Percy, Bates, and Dorsey. If any of these Findings of Fact is a Conclusion of Law, it shall be deemed a Conclusion of Law and if any Conclusion of Law is a Finding of Fact, it shall be deemed a Finding of Fact.

## III.     PRELIMINARY CONCLUSIONS OF LAW

"A preliminary injunction is available when the moving party can demonstrate that the nonmoving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory relief is inadequate and that the moving party has a reasonable likelihood of success on the merits." *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009). "In considering preliminary injunctions, courts also weigh the potential hardships to the relative parties and others, and the public interest." *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). The U.S. Supreme Court's *Winter* test for preliminary injunctions requires that movants establish "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*). The purpose of a preliminary injunction is to preserve the *status quo* until the matter can be litigated on the merits.

First, the Court concludes that the Company has demonstrated immediate and irreparable harm that will result to the Company if it is unable to post financial and other disclosures and access its transfer agent. The Court further concludes that the Company and its shareholders will suffer immediate and irreparable harm unless control is restored to the Company's Board. Second, the Court concludes that the Company is likely to prevail on the merits, at least in part, of its declaratory relief claim pertaining to Board control. The Court concludes that it may not supplant the power of a corporate board to control the company's business without statutory authority and even then, only in extreme situations. *See, e.g., Hines v. Plante*, 99 Nev. 259, 261, 661 P.2d 880, 881-82 (1983) (discussing the appointment of a receiver pendent lite).

Alternatively, the Court concludes that the Company is likely to prevail on the merits of its breach of fiduciary claim against Percy due to the facts and circumstances related to the Control Dispute. The Court concludes that, as a member of the Board, Percy was required to put the Company and its shareholders' interests above those of his own. *See In re Amerco Derivative Litig.*, 127 Nev. 196, 223-24, 252 P.3d 681, 700-01 (2011).

Further, the Court concludes that the balance of hardships and public interest consideration favors the Company and its shareholders. On one hand, the Company and its shareholders will be harmed if it is further delayed in its ability to make routine financial disclosures with the OTC and/or interface with its stock transfer agent. On the other hand, the Court modifies the terms of the Temporary Restraining Order to minimize harm to Percy while preserving control to the Board and ordering Percy to adhere to the Company's Bylaws.

Finally, the Court concludes that the $5,000 bond posted by the Company on September 23, 2022, is sufficient security for the preliminary injunction to issue. NRCP 65(c) gives this Court considerable discretion in setting any bond required for injunctive relief. The purpose of the bond is to provide a wrongfully enjoined party recourse for the wrongful issuance of an injunction. *See* NRCP 65(c); *Tracy v. Capozzi*, 98 Nev. 120, 125, 642 P.2d 591, 594-95 (1982). The Court concludes that the bond previously posted by the Company is sufficient given the likelihood of the Company succeeding on the merits of its claims and the low risk of monetary loss to Percy.

Therefore, given the foregoing, the Court concludes that the Company has met the requirements for a preliminary injunction under NRCP 65 and that an injunction should issue as further described below. Notwithstanding, the First Amendment of the United States Constitution and Section 9 of the Constitution of the State of Nevada both recognize and protect an individual's freedom of speech. These constitutional protections also apply to Percy, even in his capacity as an officer and/or director of the Company.

**IV.   ORDER**

**NOW THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's request for a preliminary injunction is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant shall not take any action on behalf of the Company, unless said action is expressly authorized by the Board pursuant to the procedures set forth in the Company's Bylaws.

**IT IS FURTHER ORDERED** that Defendant shall not, unless expressly authorized by the Board, communicate on behalf of the Company with (a) the Company's shareholders, (b) the Company's stock transfer agent, (c) the OTC Markets Group, and (d) the Nevada Secretary of State. However, Defendant's constitutional right of freedom of speech shall be preserved and maintained. This order does not, nor does it intend to curtail Defendant's ability to communicate with any individual, organization, and/or governmental entity, in his individual capacity.

**IT IS FURTHER ORDERED** that the Company's Board is the singular entity/party in control of the Company, and is comprised of Daniel Bates, Christopher Percy, and Dr. Michael Dorsey.

**IT IS FURTHER ORDERED** that Dr. Dorsey is currently in control as a director, however, Defendant may later seek to challenge Dr. Dorsey's board membership.

**IT IS FURTHER ORDERED** that no additional funds shall be deposited by the Company as security for this Order under FRCP 65(c), and in accordance with 28 U.S.C. 1450, the $5,000.00 bond posted with the State Court by Plaintiff on September 23, 2022, shall remain valid and effectual, notwithstanding the Notice of Removal filed by Defendant on November 3, 2022.

**IT IS SO ORDERED**.

DATED: December 7, 2022

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE